## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

No. 2:23-cr-20483

v.

Hon. Matthew Leitman
United States District Judge

PACINO HORNE,

      Defendant.

_____/

## PACINO HORNE'S SENTENCING MEMORANDUM

### Introduction

Pacino Horne is a 41-year-old man that comes before this Honorable Court with no prior criminal record. He has lived a life that most have only seen in movies. He went from an inner-city child forced to overcome unimaginable obstacles, to a professional athlete, and now a remorseful man who realizes that there is never an acceptable reason to take a "shortcut" to financial success. Before addressing his requests to this Honorable Court, Mr. Horne insisted that I begin his Memorandum by apologizing to his family, the children that look up to him, those who consider him a role model, and most importantly to this Honorable Court.

On October 9, 2024, Mr. Horne clearly demonstrated acceptance of responsibility for his offence and has assisted authorities in the prosecution of his

own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources. (PSR ¶ 14) Mr. Horne plead guilty to the one count indictment charging Wire Fraud in violation of 18 U.S.C. § 1343. There is no plea agreement in this case. Sentencing is scheduled for April 4, 2025.

Mr. Horne's applicable guideline range is in Zone B of the Sentencing Table. Therefore, the minimum term may be satisfied by a sentence of probation that includes a condition or combination of conditions that substitute home detention for imprisonment according to the schedule in USSG § 5C1.1(e). USSG §5C1.1 (c). (PSR ¶ 59).

Horne also received an adjustment under USSG §4C1.1 (Adjustment for Certain Zero Point Offenders). Therefore, a sentence other than a sentence of imprisonment, in accordance with USSG § 5C1.1(b) or (c)(3) is generally appropriate. USSG § 5C1.1, comment. (n10). (PSR ¶ 60).

For the reasons that will be more thoroughly explained in this memorandum, the defense is requesting that Ms. Horne be sentenced to a period of 30 days of home confinement followed by 2 years of probation. That sentence is "sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)." *United States v. Vowell,* 516 F.3d 503, 512 (6th Cir. 2008).

## The Individual Before the Court

### *The Rise and Fall of a Champion*

Pacino Horne grew up in a home with two parents that suffered from drug addiction. His mother primarily raised him, and his father was absent as a result of being incarcerated for most of Mr. Horne's life. Not only were both of Mr. Horne's parents suffering from addiction, they both also suffered from mental health issues. His mother is deemed mentally disabled, and his father has been diagnosed with mental conditions including mental health disorder. (PSR ¶¶35-36 60). The PSR reports an investigation that describes a traumatic incident that occurred when Mr. Horne was only 15 years old. (PSR ¶36). The records reflect Mr. Horne's father hallucinating after using illegal substances. *Id*. Following the hallucinations, his father fired two shots inside of the home. Mr. Horne, his mother, and his siblings ran from the home to a gas station. Mr. Horne's father jumped from a two-story building and chased them to a gas station with a shotgun. *Id*.

Most children growing up in such a traumatic environment would have turned to drugs, gangs, or crime. Mr. Horne decided to change his situation by focusing on his education and staying out of trouble by spending his free time participating in sports. He began to play sports at a young age. Instead of allowing his situation to destroy him, Mr. Horne used the pain that he endured to motivate him to make extra efforts in his workouts and studies. He did not try to take shortcuts by stealing or

3

selling drugs to make a better living. Instead, he remained patient and steadfast in his belief that his hard work would pay off in the future.

Most kids only had to worry about homework and standardized tests while in high school. Mr. Horne and his siblings were forced to deal with much more. As a result, his grades began to drop, and he lost full ride scholarship offers from Division 1 colleges. However, Mr. Horne did not give up. Despite the loss he suffered, Mr. Horne still graduated from Willow Run High School and was allowed to play football in junior college at Grand Rapids Community College. There, he was afforded a fresh start, and he took advantage of his new set of circumstances.

Junior College football is very difficult. The teams are not financed with luxury. In fact, Grand Rapids Community College was the polar opposite of luxury. Student athletes live in small dorms and were not given money from boosters or Name Image and Likeness (NIL) contracts. Those students do not receive gifts or cars from sponsors or third-party representatives. Instead, they are given a chance to accumulate enough college credits to obtain an Associate's Degree with a GPA that is high enough to transfer to a Division 1 College. They are also expected to excel in athletics in hopes that a school will see both their grades and ability and offer them a scholarship. The team takes a bus to their games and play on fields in front of crowds that are smaller than most high school football games. More than half of

his teammates either dropped out of school or quit. Mr. Horne continued to push forward with dreams of success.

Mr. Horne's academic and athletic accomplishments gained national attention, and he was offered a full scholarship to Central Michigan University (CMU). While he was there, he helped lead CMU to a Mid-American Conference (MAC) Championship in 2006. Finally, Mr. Horne began to see his hard work come into fruition. Once again, his success proved to be good enough to have him excel to another level. In 2008 he was signed to the Detroit Lions as an Unrestricted Free Agent. Unfortunately, he was waived by the team. Mr. Horne was not deterred. He returned the next year and was signed by the Lions again. Once again, he was waived and did not make the final roster.

However, Mr. Horne's ability did not go unnoticed, and he went north to play in the Canadian Football League (CFL). In 2012, he played for the Toronto Argonauts. He was a member of the 100th Grey Cup winning team. He scored on a 100-yard touchdown that secured the victory for his team. He cemented his legacy in the CFL, and the citizens of that city held him out to be a sports hero. However, the following year he was released from that team. He signed a contract with one more football team in the CFL, hoping that he would be able to make it back to the NFL and earn enough money to live comfortably. During his tenure with his last team, Mr. Horne realized that football was not going to deliver on the financial blessings it had

promised him for so many years. He left Canada and did not sign another contract with a professional football team again.

Mr. Horne returned to the United States as a father with responsibilities and people who depended on him for financial support. He began to get into the entertainment business around the year 2015. Eventually, he gained enough experience to open his own record label in 2016. He signed artists, held concerts, hosted events, distributed music and made music videos. He also opened a restaurant and a bar.

During COVID, Mr. Horne heard rumors of dozens of business owners taking out loans to invest in their businesses. He hoped that the loan would give him the financial means to solidify his businesses and provide him with the ability to conduct business at a high level, thereby reducing the stress of the day-to-day issues of entrepreneurship. Although he knew that the documents he submitted contained false information, he planned to pay the money back. That decision does not reflect Mr. Horne or his character.

*Mr. Horne's Character*

Despite the allegations in the government's sentencing Memorandum, Mr. Horne has not been arrested, charged, or indicted with allegations of drug trafficking. They provide no proof of Mr. Horne selling drugs to anyone or buying drugs from anyone. The Defense asks this Court not to consider these allegations during its sentencing

of Mr. Horne. These allegations are an attempt to punish Mr. Horne without so much as finding of probable cause connecting Mr. Horne to any illegal items or activity. The government is unable to connect Mr. Horne to the sale of any drugs. There have been no recorded wire taps, hand to hand transactions or proof of conspiring to sell or purchase drugs. Instead, the government tells this Court that they found marijuana in a home they "believe" to be used to facilitate drug activity. That is not enough to establish possession or distribution. Moreover, the weapons that were found in these residences were legally registered to Mr. Horne. There is no evidence of them ever being used for anything more than storage. It is not illegal to take pictures with weapons that are legally registered. Mr. Horne was not a convicted felon at the time those pictures were taken and had a Constitutional right to bear arms. There is no evidence of Mr. Horne possessing a weapon while doing anything illegal. The items found in those homes were found in 2022. The government has had almost a thousand days to come forward with any charges related to those items and has failed to do so. It should also be noted that the money, jewelry, and other items are still the subject of civil forfeiture proceedings that have been stayed through April 1, 2025.

I submit to the Court that Mr. Horne's character can be found in the things that this Corut has seen him do during the pendency of this case. Mr. Horne turned himself in to answer for the allegation in this indictment on September 7, 2023. This Court released Mr. Horne on bond under the supervision of the United States Pretrial

Services. Mr. Horne has complied with all Court ordered conditions of release. He has not had any infractions. In fact, the Defense filed an unopposed motion to modify Mr. Horne's conditions of release to allow him to reside in Nevada with his son. The Court granted the motion, and Mr. Horne has still complied with all testing and reporting requirements. Although his initial test was positive for THC all tests after the initial test were negative for all substances.

In his spare time Mr. Horne contributes to the community. He is a proud sponsor of the Inkster Bengals Youth Football Team. He provided the team with new uniforms and equipment. During the holidays he gives free turkeys to those who cannot afford them. His music company and restaurant provided jobs and opportunities to the community. Since this incident Mr. Horne has volunteered with the Vegas Strong Little League Football Team. 11U football team. He also does physical workouts with teenagers aspiring to play college football. He has a son that lives with him and his significant other in Nevada. He provides for all of his children and his significant other both financially and emotionally.

In this memo I have mentioned the trauma Mr. Horne experienced within his family. Notwithstanding his past, Mr. Horne does not harbor any ill will towards anyone. He has a good relationship with his parents and his siblings. He communicates with them all on a consistent basis. It is important to note that Mr. Horne has a strong support system. This support network will be invaluable in aiding

his rehabilitation process. His family and friends support Mr. Horne and recognize that he has made a bad decision. Although they are aware of the current charges against Mr. Horne, they still support him. I have attached some letters of support to this document. (See Exhibit A).

## Nature of offense

Mr. Horne's actions resulted in him being awarded $149,000.00. acknowledges the seriousness of this offense and is remorseful. Initially he did not realize how an offense like this could cause harm onto others. However, now he understands that fraudulent activity with business loans causes harm to business owners and programs like the Small Business Association's EIDL program. This acknowledgment is not merely a formality; it reflects a genuine understanding of the consequences of his actions. Since the incident, Mr. Horne has expressed profound remorse. When we spoke about the ramifications of his actions he said "It was a stupid decision. People kept telling me how easy it was, and that all I had to do was pay the money back. I let one decision change my entire life. Now I have to be a felon for the rest of my life. It's embarrassing. I'm going to lose everything and have to start all over again." Mr. Horne's words and actions have shown a willingness to learn from this experience and he is determined to become a better individual and a more responsible member of society.

**Adequate deterrence**

Convicting Mr. Horne of this offence is and placing him on probation is adequate deterrence and enough to ensure that he will not commit any crimes in the future. The PSR Report also supports the notion that Mr. Horne's actions can be deterred short of incarceration. The Report indicates that "Mr. Horne has no prior offenses similar to the instant offense. Consequently, his conviction in the instant offense may serve as an adequate deterrence to future conduct. (PSR ¶79).

In addition, it should be noted that for defendants with similar records and similar conduct only 53% received a sentence of imprisonment. The median length of imprisonment for those defendants was only one month. (PSR ¶87). Also, the cost pf prosecution does not support a sentence of incarceration. If the Court follows the recommendation from the government, the costs of prosecution will be $34,472 to $60,326. (PSR ¶70). However, if the Court sentences Mr. Horne to two years of probation the costs will only be $9,480.

**Incarcerating Mr. Horne Will Not Protect the Public**

Count 1 is not a violent offense. There is no need to protect the public from Mr. Horne. In fact, the Court should allow Mr. Horne to remain in the community so that he can begin to pay restitution back to the program that loaned him the money so that money can be used to help the business owners in the community. Mr. Horne has never committed any type of fraud in the past so there is no evidence that there

10

is a need to protect the public from him committing any fraudulent acts in the future that would require the Court to protect the public from his actions.

## Sentencing Guidelines

The sentencing Guidelines are eight to fourteen months in Zone B of the sentencing table. The term can be satisfied by sentencing Mr. Horne to a term of probation according to the schedule in USSG §5C1.1(e).

## Conclusion

Throughout his life, Mr. Horne has fought through adversity without taking shortcuts. He made the choice to take a shortcut late in life and it cost him his reputation, dignity and placed his liberty in jeopardy. He never imagined that he would be in a federal courtroom staring at federal charges and imprisonment. He humbly asks this Court to allow him to continue to prove that he can abide by any conditions ordered by this Court while in the community. He is asking for a sentence of probation and home confinement. A sentence of probation would allow him to continue his journey towards rehabilitation while remaining a productive member of the community. Incarceration would not only disrupt his progress but could also hinder his ability to contribute positively to society. Considering his lack of a criminal record, family support and compliance, such a sentence will be "sufficient but not greater than necessary" to meet Congress's penological goals. *See* 18 U.S.C. §3553 (a)(2); see also Kimbrough, 552 U.S. at 89.

11

Respectfully Submitted

James King
Counsel for Mr. Horne
PO Box 14535
Detroit, MI 48214
(313) 312-5779
King1je@gmail.com

Dated: March 26, 2025

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

                       No. 2:23-cr-20483

v.

                       Hon. Matthew Leitman
                       United States District Judge

PACINO HORNE,

     Defendant.

_____/

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2025, I electronically filed the forgoing paper with the Clerk of the Court using ECF System which will send notification of such filing to the United States Attorney's Office, 211 W. Fort Street, Suite 2001, Detroit, MI 48226.

_____

James King
Counsel for Mr. Horne
PO Box 14535
Detroit, MI 48214
(313) 312-5779
King1je@gmail.com

13

# EXHIBIT A

Kenneth McClure

7406 Delta Commerce Dr

Lansing,MI 48917

517-202-6213

KenJr87@gmail.com

To Whom It May Concern

# To The Honorable

Hello my name is Kenneth McClure Jr I am the owner of Ken and Phyllis McClure Trucking Company. I have known Pacino Horne for over twenty years.  We both attended Central Michigan University where we played football together.  When I first enrolled as central as a student athlete I felt lost it was a lot to grasp coming from a high school environment. Pacino who was already attending Central took me under his guidance and was very instrumental in helping me obtain my college degree.  What started out as a simple friendship led to us becoming college roommates for three years at central.  Pacino always checked on me and made sure that I was progressing on both the football filed but also in the classroom.  He knew how important it was for me to obtain my college degree.  He pushed me and others at central to be the best we could be.  We spent countless hours together while in college going over football and life skills.  Pacino helped me grow throughout my college experience and without his guidance I would not be the person I am today.  What started out as a college friendship over twenty years ago has grown into a lifelong bond. Pacino was there for me in college and was also there for my wedding.  He has been there for me when I have needed him.

I am writing this letter on behalf of Pacino Horne.  I understand that people go through many obstacles in life and everyone needs support.  I am writing this letter to the court so that I can offer the court a fuller picture of who the real Pacino Horne is as a person.  Pacino has helped me and so many old and present players from college.  He was a leader on and off the football field and has helped shape the lives of many people throughout the years.  Pacino has been an inspiration for kids coming from less fortunate backgrounds and teaching them that no matter where you start from in life you can always obtain what you want through hard work and dedication.

I would like to thank the court for the opportunity to lend a helping hand in fully understanding the impact that Pacino has had on many individuals lives throughout the years.  I am available to confirm the facts in this letter as necessary.

Sincerely,

Kenneth McClure Jr

Christina Ware
P.O. Box 971602
Ypsilanti, MI. 48197
734-323-6736

3-11-2024

Judge Matthew F. Leitman,

I'm writing this letter on behalf of Pacino Horne, to offer a more complete picture of who and what he represents for his family and community.
Pacino and I have shared a close bond through out his child and adulthood years. I have always been his favorite sought after Aunt.  He has been an well-respected, kind nephew and lovable father.
Pacino had a no-nonsense personality that displayed in his studies and on the football field.  When he was given the opportunity to play football professionally in another country, he immediately jumped on the chance to make a difference In hisself.  The experience was quite humbling for him and cultivated a superior character that everyone loves and appreciates. He found hisself being more resilient in his way of living.  When Pacino is not spending quality time with his children, he utilizes his spare time helping family and friends anyway possible.  He is a pillar of the community.
Pacino exhibits a positive attitude and tenacious behavior when handling situations. It is without a doubt that he will excel in correcting any mistakes in a constructive way.  I hope you find that this letter corresponding to Pacino Horne and his case acts as effective and helpful during the court's decisions about this case.

Sincerely,
Christina Ware

Carl D. Brown
26821 Dartmouth
Inkster, Michigan 48141
(313) 999-1546 or Carldelon@hotmail.com

To Whom It May Concern:

I have known Pacino his whole entire life. I'm his fifty-three-year-old uncle that helped raised and mentor him throughout his trauma years as well as adulthood. Pacino started off life with many difficult challenges, both parents consistently dealt with legal and substances abuse issues. Pacino's perseverance and self-determination goes beyond measure. He has been driven since early adolescence making sure he is successful in both his private and professional life.

Pacino has always had such a peaceful spirit and calm temperament. Those come into contact with him recognize these characteristics within minutes of his personal interaction. Upon graduation from Willow Run High School (2002) Pacino earned an athletic Scholarship from Grand Rapids Community College. By 2004 he had earned another athletic scholarship from the Central Michigan University. While attending Central Michigan University his entrepreneurs spirit took flight. Also, He won a Championship with Canadian Football League (CFL) Toronto Argonauts in his professional career in football (2012).

I would just humbly ask that that you grant Pacino as much grace as you possibly can allow. Pacino is not a menace nor a thief. If you wish to know more about him, or have any questions please feel free to contact me at any time, without hesitation.

Sincerely Yours,

Carl D. Brown

Elijah Smith

Personal trainer

To Whom It May Concern,

I'm Elijah Smith, a boxing trainer, and I want to tell you about my client, Pacino Horne . He's an awesome person and really hard-working. He shows up, trains hard, and gives it his all every single day. He's not just all talk; he proves his dedication through his actions.

Pacino Horne  is always on time, pushes through tough workouts, and never cuts corners. He's respectful to everyone and carries himself with honesty and a good attitude. These things make him more than just a good athlete; they make him a great person.

I fully stand behind Pacino Horne . He's reliable and has earned my trust and respect.

Kind regards,

Elijah Smith.